UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GORDON R. TOLBERT, et al.,<br>Plaintiffs,<br>v.<br>SUBARU OF AMERICA, INC., et al.,<br>Defendants. | No. 2:25-cv-03426-DAD-SCR<br><br>ORDER DENYING PLAINTIFFS' MOTION TO REMAND<br><br>(Doc. No. 9) |

This matter is before the court on plaintiffs' motion to remand this action to the Stanislaus County Superior Court. (Doc. No. 9.) On January 21, 2026, the motion was taken under submission on the papers pursuant to Local Rule 230(g). For the reasons set forth below, the court will deny plaintiffs' motion to remand.

**BACKGROUND**

On October 23, 2025, plaintiffs Gordon Tolbert and Eric Delarm filed this action against defendants Subaru of America, Inc. ("defendant") and Does 1–50 in the Stanislaus County Superior Court. (Doc. No. 1-2 at 2.) In their complaint, plaintiffs allege as follows.

On or around November 9, 2021, plaintiffs purchased a 2022 Subaru Legacy that was manufactured or distributed by defendant. (*Id.* at 4.) Plaintiffs received express warranties from defendant as part of their purchase. (Doc. No. 1-2 at 4.) During the warranty period, plaintiffs allege that the vehicle experienced electrical, structural, and suspension defects. (*Id.*) Plaintiffs

aver that they delivered the vehicle for repair to defendant and/or its authorized repair centers. (*Id.*) According to the complaint, defendant and/or its authorized repair centers failed to repair the vehicle and have not replaced the vehicle or made restitution to plaintiffs. (*Id.*)

Based on these and other allegations, plaintiffs assert the following four causes of action: (1) failure to service or repair in violation of the Song-Beverly Act, California Civil Code § 1793.2(d); (2) failure to commence repairs within a reasonable time in violation of the Song-Beverly Act, California Civil Code § 1793.2(b); (3) failure to make available sufficient replacement parts and service literature to effect repairs in violation of the Song-Beverly Act, California Civil Code § 1793.2(a)(3); and (4) breach of the implied warranty of merchantability in violation of California Civil Code §§ 1791.1, *et seq.* (*Id.* at 3–7.) Plaintiff seeks, among other forms of relief, actual damages, restitution, "a civil penalty in the amount of two times Plaintiffs' actual damages pursuant to Civil Code section 1794(c)[,]" and reasonable attorneys' fees. (*Id.* at 7.)

On November 25, 2025, defendant Subaru removed this action to this federal court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, on the grounds that diversity jurisdiction exists because there is complete diversity between plaintiffs and defendant and the amount in controversy in this action exceeds $75,000.00. (Doc. No. 1.)

On December 8, 2025, plaintiffs moved to remand this action to the Stanislaus County Superior Court, arguing that the removal was untimely and diversity jurisdiction is lacking. (Doc. No. 9 at 5–7.) On December 22, 2025, defendant Subaru filed an opposition to plaintiffs' motion to remand. (Doc. No. 10.) On December 30, 2025, plaintiffs filed a reply thereto. (Doc. No. 11.) On January 21, 2026, pursuant to Local Rule 230(g), plaintiffs' motion was taken under submission without a hearing. (Doc. No. 13.)

**LEGAL STANDARD**

A suit filed in state court may be removed to federal court if the federal court would have had original jurisdiction over the suit. 28 U.S.C. § 1441(a). Removal is proper when a case originally filed in state court presents a federal question or where there is diversity of citizenship

/////

among the parties and the amount in controversy exceeds $75,000.00. *See* 28 U.S.C. §§ 1331, 1332(a).

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). "The removal statute is strictly construed against removal jurisdiction, and the burden of establishing federal jurisdiction falls to the party invoking the statute." *Cal. ex rel. Lockyer v. Dynegy, Inc*., 375 F.3d 831, 838 (9th Cir. 2004) (citation omitted); *see also Provincial Gov't of Marinduque v. Placer Dome, Inc*., 582 F.3d 1083, 1087 (9th Cir. 2009) ("The defendant bears the burden of establishing that removal is proper."). If there is any doubt as to the right of removal, a federal court must reject jurisdiction and remand the case to state court. *Matheson v. Progressive Specialty Ins. Co*., 319 F.3d 1089, 1090 (9th Cir. 2003); *see also Valdez v. Allstate Ins. Co*., 372 F.3d 1115, 1118 (9th Cir. 2004).

**ANALYSIS**

Plaintiffs contend that defendant improperly removed this action to federal court because (1) removal was untimely, and (2) defendant failed to satisfy its burden to establish federal subject matter jurisdiction based on diversity. (Doc. No. 9 at 5–10.) With regard to their second argument, plaintiffs do not dispute that complete diversity of citizenship exists here. Instead, plaintiffs argue that defendant has failed to establish that the amount in controversy exceeds $75,000.00. (*Id.* at 8–10.) In opposition, defendant argues that removal was timely in light of the fact that the amount in controversy could not be ascertained from the face of plaintiffs' complaint. (Doc. No. 10 at 5–10.) Defendant also contends that the amount in controversy exceeds $75,000.00 when calculating the actual damages and civil penalties that plaintiffs seek to recover in this case. The court will address each issue in turn.

**A. Timeliness**

Plaintiffs argue that defendant's notice of removal was untimely because defendant did not remove the action within 30 days of service or receipt of plaintiffs' complaint as required by 28 U.S.C. § 1446(b)(1). (*See* Doc. No. 9 at 5–6.) Conversely, defendant contends that the notice was timely pursuant to § 1446(b)(3) because the 30-day clock to file the notice of removal was

/////

not triggered until defendant received a copy of the Retail Installment Sales Contract ("RISC") from plaintiffs on October 31, 2025. (Doc. No. 10 at 5.)

To remove a case to federal court, the defendant must timely file a notice of removal. 28 U.S.C. § 1446(a)–(c). Section 1446 sets out two thirty-day windows during which a case may be removed: "(1) within thirty days of receipt of the complaint, 28 U.S.C. § 1446(b)(1), or (2) 'if the case stated by the initial pleading is not removable,' within thirty days of the defendant's receipt of 'a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable,' 28 U.S.C. § 1446(b)(3)." *Martinez v. Jaguar Land Rover N. Am., LLC*, No. 1:24-cv-00027-KES-EPG, 2025 WL 1862810, at *2 (E.D. Cal. July 7, 2025) (internal citations omitted) (citing *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 692–93, 695 (9th Cir. 2005)).

"The latter thirty-day period for removal begins when an amended pleading, motion, order, or other paper makes a ground for removal 'unequivocally clear and certain.'" *Id.* (quoting *Dietrich v. Boeing Co.*, 14 F.4th 1089, 1095 (9th Cir. 2021)). Section 1446 does not define "other paper," but the Ninth Circuit has interpreted the term broadly. *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1126 (9th Cir. 2013) (plaintiffs "need only provide to the defendant a document from which removability may be ascertained" (citing 28 U.S.C. § 1446(b)(3))).

In their complaint, plaintiffs' allegations include reference to the vehicle's make, model, year, and VIN yet did not include the vehicle's purchase price or any specific or estimated monetary sum quantifying plaintiffs' alleged damages. (*See generally* Doc. No. 1-2.) Plaintiffs also provide no explanation in their briefing as to how defendant could have ascertained the amount in controversy from the information provided in the complaint.[1] Accordingly, the court concludes that the limited information provided in plaintiffs' complaint was insufficient to allow defendant to calculate the amount in controversy. (Doc. No. 10 at 5.); *Martinez*, 2025 WL 1862810, at *3 ("Without the purchase price or other monetary sum quantifying Martinez's damages, [the defendant] lacked sufficient information to calculate the amount in controversy.");

[1] Indeed, plaintiffs did not address the timeliness issue whatsoever in their reply.

*Alvarez-Munguia v. Ford Motor Co.*, No. 23-cv-02751-BLF, 2024 WL 69076, at *2 (N.D. Cal. Jan. 5, 2024) (finding that given the omission of the sale price or any specific measure of damages, the vehicle's make, model, year, and VIN alone were insufficient to trigger the 30-day removal period under § 1446(b)(1)). Because plaintiffs' complaint lacks sufficient information for defendant to ascertain removability, defendant was not subject to the thirty-day removal period under § 1446(b)(1).

The court instead finds that the 30-day removal period commenced on October 31, 2025, when plaintiffs produced the RISC to defendant. In its notice of removal, defendant explains that it was able to identify the total sale price of the vehicle from the RISC and calculated the amount in controversy using that number. (Doc. No. 1 at ¶¶ 4, 23–24.) The RISC for the vehicle indicates the total sale price was $46,985.28, which included a down payment of $4,200 and a finance charge of $7,821.90. (Doc. No. 9-1 at 8.) The RISC payment schedule consists of 71 payments of $594.24 with the final payment due on November 24, 2027. (*Id.*) The court finds that the RISC therefore constitutes an "other paper" from which defendant could ascertain that the amount in controversy exceeded $75,000.00 and triggered the 30-day removal period under § 1446(b)(3). *Martinez*, 2025 WL 1862810, at *4 (finding that defendant's receipt of the subject vehicle's sale contract served as an "other paper" from which defendant could ascertain the amount in controversy and triggered the thirty-day removal period under § 1446(b)(3)); *see also Brannon v. Jaguar Land Rover N. Am., LLC*, No. 2:24-cv-02156-DC-JDP, 2024 WL 4616149, at *4 (E.D. Cal. Oct. 30, 2024) (holding that receipt of a vehicle lease agreement can constitute an "other paper" triggering removability under § 1446(b)(3)). Accordingly, pursuant to § 1446(b)(3), the court concludes that defendant timely filed its notice of removal on November 25, 2025.

**B. Amount in Controversy**

As noted, plaintiffs do not dispute that complete diversity of citizenship exists here. Instead, plaintiffs argue that defendant has failed to show by a preponderance of the evidence that the amount in controversy in this action exceeds $75,000.00. (Doc. No. 9 at 8.) In opposition, defendant argues that the amount in controversy— $44,763.81 + 2x civil penalties =

$134,291.43[2]—indisputably exceeds the minimum threshold of $75,000.00. (Doc. No. 10 at 10.) As noted above, plaintiffs did not specify, estimate, or provide a threshold amount of damages sought in their complaint. (*See generally* Doc. No. 1-2.) Therefore, defendant must show it is more likely than not that the total amount in controversy exceeds $75,000.00 for this court to exercise jurisdiction over this case. *Fritsch*, 899 F.3d at 793.

1. Actual Damages

Defendant argues that plaintiffs' actual damages are $46,985.28, which is the total sale price listed in the RISC. (Doc. No. 10 at 10.) Plaintiffs, on the other hand, do not provide any estimate of the amount of actual damages they seek, instead, simply asserting that defendant's actual damages estimate based on the vehicle's total sale price is speculative and fails to deduct the mileage use offset. (Doc. Nos. 9 at 8; 11 at 2–3.)

In an action brought pursuant to the Song-Beverly Act, a plaintiff may recover "in an amount equal to the actual price paid or payable by the buyer," reduced by "that amount directly attributable to use by the buyer." Cal. Civ. Code § 1793.2(d)(2)(B)–(C). This reduction in damages is commonly referred to as the "use offset." *Garcia v. FCA US LLC*, No. 1:24-cv-01116-JLT-SKO, 2025 WL 2982589, at *3 (E.D. Cal. Oct. 23, 2025) (citing *Schneider v. Ford Motor Co.*, 756 F. App'x 699, 701 (9th Cir. 2018)).

The court finds that defendant's reliance on the total sale price in determining actual damages is not speculative and rejects plaintiffs' argument to the contrary. As several other courts have held, the sale price listed in an RISC is sufficient to establish actual damages under the Song-Beverly Act. *Sauceda v. FCA US LLC*, No. 1:24-cv-01018 JLT CDB, 2025 WL 3042355, at *4 n.2 (E.D. Cal. Oct. 31, 2025) (citing *Quinonez v. FCA US LLC*, No. 2:19-cv-02032-KJM, 2020 WL 3397565, at *3 (E.D. Cal. June 19, 2020)); *Garcia v. FCA US LLC*, No. 1:24-cv-01116-JLT-SKO, 2025 WL 2982589, at *5 (E.D. Cal. Oct. 23, 2025); *Lopez v. FCA US*

/////

/////

[2] As explained below, this amount accounts for any mileage offset.

*LLC*, No. 1:18-cv-01487-DAD-SAB, 2019 WL 2591101, at *3 (E.D. Cal. June 25, 2019).[3] These courts have reasoned that sale prices in purchase agreements are a proper measure of actual damages where, as here, plaintiffs seek restitution, (Doc. No. 1-2 at 7), because if plaintiffs successfully litigate their claims, then the defendant would have to "pay restitution to [plaintiffs] for payments made on the sales contract and pay off the balance of [p]laintiff[s]' loan, on [their] behalf, to the lienholder of the [v]ehicle."[4] *Quinonez*, 2020 WL 3397565, at *3 (internal quotations omitted); *Garcia*, 2025 WL 2982589, at *4 (quoting *Quinonez*, 2020 WL 3397565, at *3); *see also Sauceda*, 2025 WL 3042355, at *4 (citing *Quinonez*, 2020 WL 3397565, at *3 and

/////

---

[3] The court notes that at least one court in this district has found it more appropriate to use the total cash price rather than the total sale price listed in an RISC when calculating actual damages sought under the Song-Beverly Act. *McGill v. FCA US LLC*, No. 2:21-cv-00093-MCE-JDP, 2021 WL 5883037, at *4 (E.D. Cal. Dec. 13, 2021). While this court declines to follow that approach, even if the court were to use the total cash price here ($33,731), (Doc. No. 9-1 at 9), it would not affect the court's ultimate conclusion regarding the amount in controversy.

[4] Although unclear, plaintiffs appear to argue in their reply that defendant must present specific evidence showing the actual payments made on the RISC and that their recovery should be limited to those payments. (*See* Doc. No. 11 at 2–3.) Plaintiffs rely on several district court cases from this circuit in support of this contention but the court finds the cases relied upon by plaintiffs to be distinguishable. First, one of those cases involved a defendant relying on the manufacturer's suggested retail price as opposed to the actual sale price of the vehicle. *Chajon v. Ford Motor Co.*, No. 2:18-cv-10533-RGK, 2019 WL 994019, at *1 (C.D. Cal. Jan. 8, 2019) (rejecting the defendant's alleged number of actual damages because "no sales contract ha[d] been located . . . only the MSRP" and there was "no indication as to the actual agreed-upon sale amount"). The remaining cases relied upon by plaintiffs are unpersuasive because they go beyond the holding aptly stated in *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1008 (N.D. Cal. 2002), where the court found that limiting a plaintiff's recovery to payments actually made is consistent with the Song-Beverly Act where the agreement at issue is a *lease agreement*, rather than a purchase agreement, and involve the defendant's failure to account for finance charges or use offset. *See Echemendia v. Subaru of Am., Inc.*, No. 2:20-cv-09243-MCS-JEM, 2020 WL 7311348, at *2 (C.D. Cal. Dec. 11, 2020) ("[Defendant] inexplicably cites the $36,141.68 purchase price as Plaintiff's actual damages without accounting for finance charges, evidence concerning when repairs were made, or anything else that could allow the [c]ourt to reliably estimate actual damages."); *Jackson v. Mercedes-Benz USA, LLC*, No. 5:20-cv-01681-DOC-KK, 2020 WL 7090839, at *2 (C.D. Cal. Dec. 2, 2020) (citing *Brady* and explaining that "a plaintiff's recovery is limited to the actual payment amount to the seller"); *Savall v. FCA US LLC*, No. 21-cv-00195-JM-KSC, 2021 WL 1661051, at *2 (S.D. Cal. Apr. 28, 2021) (citing *Echemendia* and *Jackson*, and rejecting defendant's proposed sum of damages because defendant failed to "argue that [p]laintiff made all payments" under the installment contract).

holding that the plaintiff's actual damages consisted of payments already made and release from the plaintiff's obligations under the vehicle loan).

While the court is persuaded that defendant's actual damages estimate based on total sale price is sufficient, the California Civil Code imposes a reduction in damages by the use offset. Cal. Civ. Code § 1793.2(d)(2)(C); *Garcia*, 2025 WL 2982589, at *3 ("To calculate the use offset, the [d]efendant must multiply the amount [p]laintiff paid for the vehicle by a fraction, where the denominator is 120,000 and the numerator is the number of miles the buyer drove between purchase and the first relevant repair for the nonconformity."). While defendant initially argues that the use offset does not need to be accounted for because the "'amount in controversy is established by what the plaintiff demands, not by any reductions that a defendant might achieve through its defenses[]'" (Doc. No. 10 at 7), defendant has ultimately submitted that that the amount in controversy requirement is met here even if the use offset proposed by plaintiffs ($2,221.47) is applied[5], (*see id.* at 8, 10). Accordingly, the court finds that defendant's actual damages estimate of $44,763.81 ($46,985.28 (total sale price listed in RISC) - $2,221.47 (plaintiffs' proposed mileage offset)) is not speculative.

2. <u>Civil Penalties</u>

Defendant next argues that the amount in controversy exceeds $75,000.00 once civil penalties are added to the total amount of actual damages at issue. (Doc. No. 10 at 10.) Plaintiffs argue defendant's inclusion of civil penalties is not grounded in "concrete allegations actually pled" and is instead rooted in "speculation, assumptions, or abstract theorizing untethered to the complaint." (Doc. No. 11 at 4–5.)

A plaintiff who established a willful violation of the Song-Beverly Act may recover a civil penalty of up to "two times the amount of actual damages." Cal. Civ. Code § 1794(c). Song-Beverly civil penalties should be included in the amount in controversy calculation when a plaintiff alleges the violation was willful and seeks civil penalties under the act. *See, e.g.*, *Watson*

[5] Defendant does not dispute the accuracy of plaintiffs' proposed use offset or provide a competing use offset calculation. *See Fang v. Ford Motor Co.*, No. 1:22-cv-00561-JLT-SAB, 2022 WL 3444715, at *6 (E.D. Cal. Aug. 17, 2022) (accepting defendant's use offset calculation because "[p]laintiffs d[id] not dispute the accuracy of th[e] calculation").

*v. BMW of N. Am., LLC*, No. 2:22-cv-01514-DAD-JDP, 2022 WL 12442891, at *3 (E.D. Cal. Oct. 21, 2022) (determining that the plaintiff put the civil penalties in controversy by pleading that the defendant acted willfully in failing to comply with the Song-Beverly Act and seeking up to double the actual damages in the prayer for relief); *Fang*, 2022 WL 3444715, at *8 (same); *Cortez Martinez v. Ford Motor Co.*, No. 1:18-cv-01607-LJO-JLT, 2019 WL 1988398, at *7 (E.D. Cal. May 6, 2019) (determining that plaintiffs "expressly placed" the maximum civil penalties in controversy where they alleged the defendant's failure to comply with the Song-Beverly Act was willful and the prayer for civil penalty was "in the amount of two times Plaintiffs' actual damages" (internal quotations omitted)); *Elenes v. FCA US LLC*, No. 2:16-cv-05415-CAS, 2016 WL 6745424, at *5 (C.D. Cal. Nov. 14, 2016) ("By specifically seeking the maximum civil penalty [under the Song Beverly Act], plaintiffs placed that amount in controversy."). Moreover, "[c]ourts as a matter of law, calculate the amount in controversy based upon the maximum amount of civil penalties available to a plaintiff." *Fang*, 2022 WL 3444715, at *6 (alteration in original) (quotation marks and citations omitted); *Celestine v. FCA US, LLC*, No. 2:17-cv-00597-DAD-JLT, 2017 WL 3328086, at *4 (E.D. Cal. Aug. 4, 2017).

Here, using an actual damages figure of $44,763.81, defendant contends that the two-times civil penalty pursuant to Song-Beverly would equal $89,527.62, for a total of $134,291.43 in civil penalties and actual damages. (*See* Doc. No. 10 at 10.) As defendant correctly points out, plaintiffs' complaint clearly alleges that defendant's actions were willful and that they seek the full civil penalties under the Song-Beverly Act. (*E.g.*, Doc. No. 1-2 at 4–5 ("Defendant's failure to comply with its obligations under Civil Code section 1793.2(d) was willful, in that Defendant and its representatives knew of their legal obligations and intentionally declined to follow them. Accordingly, Plaintiffs are entitled to a civil penalty of up to two times Plaintiffs' actual damages, pursuant to Civil Code section 1794(c)."); *id.* at 5 ("Defendant's failure to comply with its obligations under Civil Code section 1793.2(b) was willful, in that Defendant and its representatives knew of their legal obligations and intentionally declined to follow them. Accordingly, Plaintiffs are entitled to a civil penalty of two times Plaintiffs' actual damages, pursuant to Civil Code section 1794(c)."); *id.* at 7 ("Wherefore, Plaintiffs pray for judgment

against Defendant . . . [f]or a civil penalty in the amount of two times Plaintiffs' actual damages pursuant to Civil Code section 1794(c)[.]").) In proving the amount in controversy, defendant need not actually present evidence that it willfully violated the Song-Beverly Act for civil penalties to be included in damages calculations. *See, e.g.*, *Fang*, 2022 WL 3444715, at *7 ("[Defendant] is not required to present evidence that it willfully violated the Song-Beverly Act to include civil penalties in the damages calculation."); *Ricksecker v. Ford Motor Co.*, No. 21-cv-04681-HSG, 2021 WL 6621069, at *3 (N.D. Cal. Dec. 22, 2021) (rejecting argument that the defendant had to show that the plaintiff would receive the maximum civil penalties before it could include civil penalties in the amount-in-controversy calculation); *Brooks v. Ford Motor Co.*, No. 20-cv-00302-DSF-KK, 2020 WL 2731830, at *2 (C.D. Cal. May 26, 2020) ("It would be absurd to suggest a defendant must offer evidence showing it willfully failed to comply with the Song-Beverly Act, given that most defendants . . . will 'den[y] that [they] willfully failed to comply with the Song-Beverly [Act].'"). Accordingly, the court finds that defendant properly included civil penalties in calculating the amount in controversy.

Defendant has met its burden to demonstrate by a preponderance of the evidence that the amount in controversy in this case exceeds $75,000.00. Indeed, the court concludes that defendant has shown that the amount in controversy here is at least $134,291.43.[6] Because plaintiffs' claims for actual damages and civil penalties under the Song-Beverly Act alone are sufficient to support this conclusion according to defendant's calculations, the court need not address the other categories of damages that plaintiffs seek in this case, including attorneys' fees in resolving the pending motion.

/////

/////

/////

/////

/////

[6] $44,763.81 (actual damages) + $89,527.62 (two-times civil penalty) = $134,291.43.

**CONCLUSION**

For the reasons set forth above,

1. Plaintiffs' motion to remand (Doc. No. 9) is DENIED; and

2. The Initial Scheduling Conference is hereby RESET for October 26, 2026 at 1:30 p.m. in Courtroom 4 (DAD) before District Judge Dale A. Drozd by Zoom. The parties shall file a joint scheduling report by no later than October 12, 2026.

IT IS SO ORDERED.

Dated: **September 16, 2026**

Dale A. Drozd

DALE A. DROZD
UNITED STATES DISTRICT JUDGE